283 F.2d 307
 60-2 USTC P 9754
 WINNSBORO GRANITE CORPORATION, Winnsboro Granite Corporation
and Affiliate, Rion Crush Stone Corporation, Rion
Crush Stone Corporation, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 8082.
 United States Court of Appeals Fourth Circuit.
 Argued Sept. 29, 1960.
Decided Oct. 13, 1960.
 
 Robert W. Hemphill, Chester, S.C. (Paul Hemphill and Paul Hemphill, Jr., Chester, S.C., on brief), for petitioners.
 Carolyn R. Just, Atty., Dept. of Justice, Washington, D.C. (Howard A. Heffron, Acting Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D.C., on brief), for respondent.
 Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case is here on Petitions (consolidated by order) for review of decisions of the Tax Court of the United States[1] determining deficiencies in federal income taxes of the petitioners, Winnsboro Granite Corporation and its affiliate and wholly owned subsidiary, Rion Crush Stone Corporation. The Tax Court held against petitioners. In view of the clear and complete opinion of the Tax Court and our decision to affirm, only brief reference is made to the questions presented.
 
 
 2
 Petitioner, Winnsboro, engages in mining large and heavy blocks of rough granite stone which are loaded at its quarry on railroad flat cars. These cars then travel fourteen miles on an intrastate railroad to Rockton, an interstate outlet point. At Rockton the cars are switched to an interstate railroad carrier which owns the cars on which the granite stones are initially loaded. All of Winnsboro's such shipments are then billed to customers, f.o.b. Rockton. No processing of the stone takes place after it is loaded for shipment at the quarry, any processing necessary to convert the rough stone into monuments being applied by the purchaser after receipt thereof.
 
 
 3
 Petitioner, Rion, crushes rough stones into smaller sizes called 'aggregates' which are loaded on motor trucks at the quarry. The greater portion of Rion's sales is made to the South Carolina Highway Department and other political subdivisions which generally require that transportation costs to the job site be included in the bid price. Rion sold some aggregates at price fixed at the quarry and the transportation cost was then billed separately to the customer. The aggregates undergo no treatment processes after they are loaded at the quarry.
 
 
 4
 The questions presented are whether transportation costs incurred by Winnsboro to the railroad shipping point at Rockton and included in the sale price of the stone to customers, and the costs of transporting aggregates to a contract designation by Rion as included in its did price for delivery at job site are properly included in the 'gross income from the property' as defined in Section 114(b)(4)(B) of the Internal Revenue Code of 1939, 26 U.S.C.A. 114(b)(4)(B),[2] for the purpose of calculating the mining depletion allowance.
 
 
 5
 The pertinent statute provides that the gross income from the property for the purposes of computing percentage depletion means 'gross income from mining.' The term 'mining' as used therein includes not only the extraction of the mineral, but also the ordinary treatment processes normally applied by the owner and operator in order to arrive at a commercially marketable mineral product. Included, by way of definition of the 'ordinary treatment processes' in the case of minerals customarily sold in crude form, are the sorting, concentrating and sintering to bring it to shipping grade and form, and loading for shipment. In addition, transportation costs from the point of extraction from the ground to the plants or mills in which the ordinary treatment processes are to be applied are to be included in 'gross income from mining.'
 
 
 6
 Winnsboro contends that the size of the blocks of stone makes shipment by rail necessary; that the monumental stone is not commericially marketable until transportation is applied as an ordinary process to complete extraction; that, since the costs of transportation are included in the price of the stone to its customers, such costs are properly part of the gross income from the property. Rion contends that in the instances where customers require bid prices to include delivery to the job site, the costs of such transportation should likewise be considered as a part of the extraction costs to obtain a commercially marketable product.
 
 
 7
 The findings of the Tax Court adverse to the contentions of the petitioner are confirmed by the recent decision in United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581, June 27, 1960, involving principally the mining of raw clay which was transported to a plant for processing into fire clay and vitrified sewer pipe. While there was an established market for the raw clay, the taxpayer contended that, since its product was of high quality suited to refinement, its gross income should not be limited to the constructive income from clay in its least marketable raw form. The Supreme Court, in rejecting taxpayer's contention, held that mineral depletion for tax purposes is an allowance from income for the exhaustion of capital assets and is not designed to recompense for costs of recovery. The Court limited gross income from mining to the constructive income from the mineral product at the point where it first became commercially marketable and held that the commercially marketable product of the mineral is the one which results from the treatment processes which ordinary, run-of-the-mill miners apply to the mineral to make it fit for industrial use or sale.
 
 
 8
 The Tax Court found that Winnsboro's first 'commercially marketable product,' the product it actually sold, was the rough granite blocks after they were extracted and loaded for shipment at the quarry. In our view, transporation began at the quarry, there was no reloading for shipment at Rockton and there was no interruption of transportation from the quarry to customer. Rion's products were clearly commercially marketable when loaded at the quarry and transportation was no part of the extraction process. There was no transportation by either petitioner of its products to its plant for application of ordinary treatment processes. The preparation of a mineral for shipment does not include shipment of the mineral after it is so prepared
 
 
 9
 Affirmed.
 
 
 
 [1]
 32 T.C. 974, July 29, 1959. Issue 2 therein decided has been abandoned and is not before us for determination
 
 
 [2]
 The pertinent statutory provisions are set forth in the opinion of the Tax Court, 32 T.C. 974, to which reference is made